First off, good morning. Hope you and your families are well. As much as we'd like to see you live, this is the best we can do at this point, so we're happy to have counsel here today with us. Our first case is Butterline v. Bank of New York Mellon Trust Company et al., number 18-2908. And Mr. Wilson is here, I see, and is up first. Do you want to reserve time? Yes, Your Honor, I'd like to reserve five minutes for Butterline. That'll be granted. And I will time, and you probably should too, and I'll let you know when your time is up. So with that said, you may proceed. Your Honor, my name is William Wilson. I'm pleased to represent Mark Butterline today. He is here on his own behalf and on behalf of the estate of his deceased wife, and attempts to represent a class, which is somewhat relevant because when we get to the principal reason that I believe the city believes that we don't have a claim, it becomes important that there's a consistent policy that might affect others that's being applied by the city here. Could you tell us about the statute of limitations issue? The district court said that notice was given either when the property was deeded to the bank or when the deed was recorded. Why is that wrong? Well, you have to have some notice that there might be some sort of claim that the deprivation of process took place, because this is a claim for a deprivation of due process. Now does DART provide the necessary process? It does not. It provides a process that if it had worked as it's supposed to would be satisfactory, but the deprivation is not the existence of the DART. The deprivation is the sheriff's policy of not collecting the actual excess funds when there's a bid of this nature, and about that the public and the Butterlines in particular have absolutely no clue. When they're on notice, there's a website that delineates the DART process. It delineates the DART process to be sure. It does not tell them that the money won't be there. When there's an excess bid, there's no clue to that. They finally find that out. Does it make any difference that he never filed an answer, that he never made an appearance, that he didn't attend the sheriff's sale? No. If you have a defense to the foreclosure, that would make no difference, and he had no defense. Well, he filed a motion to set aside the sale on the court of common pleas. Yes, and I consider that also irrelevant to any of the issues before us. That was not meritorious, and it was rejected by the court of common pleas. And no appeal was taken from that? No appeal was taken from that. It was part of the Butterlines' forlorn belief that somehow they could save this house for themselves. They failed, and under the law, that's okay. They were in default on the mortgage, and the mortgagee is entitled to in the excess funds. They absolutely have a property interest. Do you have a property interest in the sheriff collecting the funds? The property interest, I believe, is in the funds. The property interest, in order to be deprived of a property interest, is entitled to due process. Once the government publishes what its selected process is, that becomes the process that is due. The case I like the best on this point is the Second Circuit's decision in Brody against the village of Port Chester. It goes through the history of this in some detail. It goes all the way back to the Supreme Court's 1877 decision in Davidson against the city of between mere process and due process. Here, the state advertised a certain process. It does it in Pennsylvania Rule of Civil Procedure 3136. It does it in a lot of case law, some of which is cited in the papers and in the district court's decisions. It does it in the that process. It departed from that. Once you materially depart from the process that is due, because that's what you told citizens you do, now you've denied those citizens that due process. That's what happened here. And then even after the misconduct occurred and the money wasn't collected, not too long after, but shortly thereafter, within a couple of months, the sheriff files a deed that represents, well, we did collect the money because it says we got this full $93,000 that was on the bid. Now, at this point, the butter lines were on notice. For purposes of our argument, at least, they'd be considered to be on notice of the DART process. And they'd also be on notice of what's published in the statute books, the Distribution of Abandoned and Unclaimed Property Act that says they have up to five years to assert a claim for that money. Now, they did that timely, fast, applied for the DART. Only then, and for the first time, did they receive any reason to even suspect that the sheriff simply doesn't collect the money. And it's that time when the cause of action for deprivation of due process accrues, in our view. Now, can I ask you a question? The DART determination, did your client have the ability to appeal that determination under Section 752 of Pennsylvania's agency law? Well, we argue that it does not, that he did not. On the case I principally cite for that is one called Campbell, where a state trooper is being told in a letter that he doesn't, isn't going to receive a certain kind of workers' comp benefits called heart and lung benefits anymore. That letter is not considered an adjudication that is appealable. His effort to appeal it, it turned back by the Pennsylvania courts. That's as close an analogy as I can find to our case. A letter from the sheriff saying not making any findings, not making any determination, but simply announcing for the first time, by the way, we just don't have your money like we're supposed to. I thought the Commonwealth Court said that appeal could lie from a decision from the sheriff's office, which was a local agency, and that federal constitutional claims could be maintained. They have said that with regard to certain other circumstances. I don't think that it applies here. But apart from that, and I have a process, and you deny it, the existence of a post-deprivation process that you might invoke doesn't remedy that denial of process. That's what the Logan and Himmerman Brush case in the Supreme Court teaches. And again, I go to the Second Circuit for the case that I find to be closest to what we have on the facts, the Alexander against Cortez case, where in regard to two different categories of property, a car and some jewelry, Mr. Alexander, who at the time of the convicted murderer, applies for the return of his property, and he has an issue for trial, survives summary judgment, because he received notices that were materially misleading about the process that he should go through to obtain that property. Back to the statute of limitations point. Is it your position that we don't even have to talk about tolling because of when the action accrued? I'll confess that I find this very confusing, Your Honor, the distinction between tolling, pardon me, and accrual. I think my personal belief is tolling is probably the right analysis, but the cases are, leave me in a quandary sometimes with the language. You're not alone. Yeah, true. I'm happy to hear at least that, Your Honor. I think tolling is probably the right approach, but because the cases seem to be all over the place, we've articulated it both ways. Okay. What about mootness? And that gets me back to the fact that I said earlier. What about mootness? They were paid all the money they had coming by the bank. Do we really need to keep the court involved in extraneous issues that are beyond what they really are trying to recover? Well, they were paid an amount that they were, and it is an amount somewhat larger and the base amount that they would have been entitled to had everything been done without wrongdoing in the first place. But it doesn't moot the issue because they are now carrying against FIFAS says that in a denial of due process case, you can seek compensation for emotional distress. The record here doesn't show evidence yet of what the butter lines experienced in that regard, but we can't rule it out because this is an affirmative defense that we do not have to plead around. And you can seek nominal damages, which is enough in a constitutional case. All right. So you've got you're over time now. Judge Roth or Judge Sirica. Do you have any other questions for now? Nothing further. No. Okay. Thank you. We'll get you on rebuttal and we'll hear from your adversary. Morning, Your Honor. Jennifer McNaughton for the City of Philadelphia and for the Sheriff's Office. The issue with the complaint here is that it just fit the due process box. What Mr. Butterline is really complaining about is that he was deprived of a procedure. He was deprived of the procedure where under Rule 3136, the sheriff was supposed to go out and collect his proceeds for him. But the sheriff didn't actually take any proceeds away from him. And the sheriff never prevented him from seeking any proceeds. But the sheriff said that he would follow that process. Did he not in the in the notice of sheriff sale indicated that that process would be followed? Right. And that's and that's in the rule. But there is no right to a process. There is no right to force the sheriff to this under the due process clause. I should say there's no claim for a denial of the sheriff's compliance with Rule 3136. What due process means is that somebody is deprived of a protected property interest without due process to establish that that deprivation is improper. There is title to a notice and opportunity to be heard. Where's the notice? Where is the notice that this feature the dark procedure is available? Well, it's it's in Rule 3136 of the Pennsylvania Rules of Civil Procedure. Where would be where was the notice to a an individual who lost their home? So the I'm looking in the my little guidebook to the record here. There's I mean, there's a published notice of sheriff sales at the record at page 167 to 171. We don't have anything else in the complaint or any other documents attached indicating what else the butter lines may have received. So we have to break that. But the notice of sheriff sale indicated that all the proceeds would be collected and be available. Did it not? I believe so, your honor. But at the same time, the city never took away Mr. Butter lines proceeds and never prevented him from getting his proceeds back. That's the difference between a due process claim. And I mean, really, this was this was an error on the sheriff's part. But it is not an error that deprived Mr. Butter line of any property interest. It was simply deprived him the opportunity to have the sheriff go out and collect the money for him. So due process, what it seeks is to give him that notice an opportunity to prevent a deprivation. And here, usually the remedy in that case is that we're looking for a better procedure to prevent a deprivation, an unwarranted deprivation. That's not what Mr. Butter line is seeking. He's seeking to just get money back. And here, there's no dispute that he was entitled to proceeds from the sale. And there's no dispute that if the sheriff had that money in hand, the sheriff would have to pay it. Okay. Okay. But if the sheriff had no obligation to get that money, but having stated that he would, has that not created an obligation that did not exist earlier? The obligation did exist earlier. It's under Rule 3136. And we're not disputing that. So even before there was that representation in the sheriff sale, there's no dispute here that the sheriff was supposed to do this. The problem is there's no right to that procedure. There's no right to under the due process clause at least. But if the sheriff says, and I am going to do that, hasn't he created a right that did not exist before he volunteered to do it? I would respectfully disagree though. It's not a property right. It's an expectation that a procedure will be followed. And that expectation did already exist in Rule 3136. The sheriff's representation that he would follow the rule is really superfluous here. But the point is, the sheriff didn't take the Butter lines proceeds away from them and didn't prevent them from collecting them. All the Butter lines were deprived of here was the opportunity to have the collect the money and give it to them. They still had the opportunity to seek it through other ways, through the dark claim form procedure, through the lawsuit against the bank, which was ultimately successful. And here it was the bank who was on the money, on the hook for the money. They were the ones who were supposed to pay it. Let me ask you about, because the district court decided this on a statute of limitations ground. So I thought I'd talk about that for a couple of our, at least some of our decisions, maybe the Bohus decision, for instance, say that accrual starts when a person has knowledge or can exercise reasonable diligence to discover the injury. And maybe it's possible they had that here, but what I'm concerned about is its cause. Did the plaintiffs have any reason to suspect a cause of the city's failure, which would be the city's failure to collect the full purchase price until December of 2014, when they said, we're not giving you anything? Well, really the accrual is when the injury occurs. But also the injury and the cause of the injury, according to our case law, how would they know what the cause of the injury was? They didn't realize until some later point that the sheriff never had the money. Well, it's clear that they were on notice. And I'd like to just back up and clarify, this only comes into play if we credit the Butterline's explanation that they were deprived of property. Of course, if there was no deprivation in the first place, then statute of limitations isn't relevant. But assuming they were deprived of property, they're out of pocket that money on the date that the deed is transferred. That's when the money was due and oweable. So at that point, they know they're injured. And I'd like to point to the asbestos case that was cited. But how do you say they know they're injured? But how do they know they're injured? They know that they don't. If the injury is that they were deprived of their proceeds, then at that point, they don't have their proceeds in hand. They may not know the full story of why the proceeds weren't weren't paid out yet. But they had a duty under Pennsylvania's discovery rule, which is adopted into Section 1983, to investigate. And here, the burden of investigating was not as burdensome as some of these cases where someone has to hire a medical expert. All they had to do was pick up the phone and call the sheriff's office. But the Dart statute said it was five years they had to pursue this, which I don't think there's any doubt that they did it within that five years. And yet, you say there's a statute of limitations issue. Well, it's actually the Unclaimed Property Act, which doesn't say that they can't file a Dart claim. It just says, after the five years, the money eschews to the state. So they have to go to the state to get the money back. We just won't have it anymore. But the fact is that Section 1983, which adopts the Pennsylvania Court Statute of Limitations, it's a different statute of limitations for a different purpose. If the money is just sitting there in the sheriff's bank account, of course, they're going to pay it out. But this is a different purpose that we want people to be active, to go protect their rights, and not just simply sit on them. I mean, under the butter lines logic, they could have waited 20 years to even pick up the phone and ask, why haven't we gotten our proceeds back yet? It just doesn't make sense. That's not consistent with what Congress wanted in enacting and, excuse me, the Pennsylvania General Assembly wanted in enacting a two-year statute of limitations. Would, if the buyer of the property had not been the bank that held the mortgage, but had been a third party, would the procedure have been handled in the same way by the sheriff's office? That's not alleged in the complaint. And I have to say, this is a very, it's a very unusual fact pattern here, that a bank that was owed the debt would bid more than the amount of the debt. So, but if we're talking about a, say, a third party buyer, then yes, the procedure would have been, that buyer would have paid up because they weren't owed anything from the sheriff. So that buyer would have paid up, and then any liens, et cetera, would be deducted, paid out to the banks, to PDW, anybody else who was owed money. And after that, if that was left over, that would go to the homeowner. Yeah, but why the difference? I can't figure out why the procedure here. It's rule 3133 of the Pennsylvania Rules of Procedure says that if it's, if the transaction's a wash, so if the bank that owns the lien that's being foreclosed buys the property for up to the amount of the debt, they don't need to just exchange the same money back and forth. So it's, it's for efficiency purposes. You don't want to have, you know, the bank has to pay the sheriff and the sheriff has to pay the bank. That doesn't make any sense if the transaction's a wash. So that's what would have normally happened. So it typically happens when a bank is bidding on the property, when the bank is the, the executing creditor. What happened here was, was very strange. It's not clear that this happens with any regularity, that banks are going to bid more than their upset price. They're not really going to these sales in order to come back with some properties that they would then have to unload. But at the same time, the bank is bound, excuse me, the sheriff is bound by the notice of sheriff sale as to how this procedure is going to go forth. And the fact that it didn't go as expected doesn't mean that the sheriff's office can change, can refuse to collect the excess that's due. Right, Your Honor. We admit there was a procedural error alleged on the facts of the complaint. The question is whether there's a right... Procedural process. Hadn't the sheriff's office created a right to a certain process by publishing that that is the process that would be followed? There's no such thing as a right to a process under the due process clause. I think what Your Honor is getting at is that it appears there was an injury here. There was a mistake made here. No, I think it appears that the sheriff's office was misrepresenting what they were going to do. Right, they didn't follow the proper procedures. We admit that, as based on the facts as alleged in the complaint. Now, that doesn't mean the butter lines had no other way to get their proceeds. And I'd like to dispel this notion that the DART procedure and the lawsuit against the bank were somehow post-deprivation remedies. They were never deprived of their proceeds in the first place. They still needed to go through the steps to claim their proceeds. And I'd also like to respond to a question about whether DART is appealable. The Commonwealth Court in Thornton squarely held that a DART determination is appealable. So understandably, Mr. Butterline was unhappy with the DART outcome, but he could have appealed that to the Court of Common Pleas. Under the local agency law, he would have gotten a trial de novo. He could have challenged the sheriff's alleged policy here of not collecting when it's the executing predator. And he could have gotten the relief he sought there. He could have gotten proceeds there. He could have gotten them from the bank, which he in fact did. The fact is, what he's complaining about is not that he lost proceeds. He still needed to go through some steps. It's almost as if any due process challenge is unripe here because he never went through the steps to claim the proceeds. Is it your position that that is fatal to his claim? Absolutely. Yes, because he wasn't deprived of anything yet. There was no final deprivation in place that he was denied process for. He simply had to go through the steps to claim the proceeds. And this lawsuit, his claim is based on the notion that he had a right to get the proceeds from the sheriff. Well, that's claiming a right to a process. And that's not what a due process claim is about. That's potentially a tort claim. That's potentially a mandamus claim about the or some other state law claim. But it's not a due process claim because he's not seeking a process. He's just seeking to get his money back. And there were other ways for him to do that. Well, thank you for answering that. I had that aside, any appeal that was not taken. It is you and your adversaries seem to jump right into the merits. But the district court decided this at least the second time after the second amended complaint was was proffered on sexual limitations grounds. Is do you think we even can go to the merits because it wasn't really determined by the district court? They rather specifically said we're not we don't need to get into this because it's time borne. How do we how should we be analyzing this? What what should opinion look like in your view? Well, in my view, the opinion should should focus on the fact that there was no deprivation here. I mean, these are alternate. They're alternate theories. They were both presented to the district court. The court can affirm on any basis in the record and we're on the we're on a motion to dismiss stage. There's no evidence. There's no fact finding. This is a pure question of law, whether on these facts alleged, Mr. Butterline alleged to deprivation, the statute of limitations comes into play if, in fact, he was deprived of the property. Well, then he waited too long to even inquire what was the basis for his injury. Well, there's two issues that we could send it back on. One is discovery and testimony with respect to the statute of limitations. And the other is the mootness matter, which was not addressed in the district court. Well, the case isn't 100 percent moot, but at this point, the damages claim is moot. So again, right. But but you do say, I mean, the procedure due process claim can still exist for nominal damages or, as your opponent said, for emotional distress damages as well. Well, assuming there there was a deprivation of due process. But to the extent that any discovery is needed on the statute of limitations, I would submit that on the face of the complaint, there's it's very clear what the time period was. There doesn't seem to be any dispute as to when the injury accrued. It was when he was the proceeds were owed to him. At that point, he had he was he was out of pocket the money when it should have been paid. So I think the complaint has everything that the court needs in order to decide this issue, just as the district court found. OK, I see you're out of time. Judge Sirica, Judge Roth, do you have anything more you'd like to ask? Nothing more. OK, thank you. Thank you, counsel. And we'll hear rebuttal for Mr. Wilson. Logan against Vimmerman Brush Company addresses both of these aspects of how there's an alternate remedy. Excuse me. I apologize. That's OK. There, there was a potential tort remedy against some other defendant. Not the state, but nevertheless, that uncertain remedy was, even though it likely was present, was deemed not enough to rescue the state from the problem of its denial of the due process. That remedy against the Bank of New York Mellon doesn't eliminate the theoretical remedy against the Bank of New York Mellon. It doesn't eliminate the due process claim. They might not cooperate. Logan deals with the fact that a tort claim might have had an uncertain outcome, take a long time to litigate. And in New York, Mellon didn't just roll over and surrender, even though everyone knew it was holding this money all along. What's more, we deal with the facts that we, the law deals with not always just the facts before us. We know the Bank of New York Mellon at least remained solvent long enough to pay out the money they did pay. But you don't know that when the claim occurs. You don't know that when the lawsuit occurs. You don't know that when the liability attaches. They could have been Lehman Brothers. Now, that there's a possible appeal, that also was something that was present in Logan. Mrs. Logan did not use the last or available state court appeals that were theoretically available and still proclaimed. We had asked the court to take the judgment of the district court, remand for further proceedings to include discovery about class certification. And if the court has unless there were questions, I probably need to be quiet. I'm fine. Nothing further. Okay, I think I'm set too. We want to thank counsel for their excellent briefing and oral argument. We will take the case under advisement and wish you both well and your families well and hope to see you soon. Thank you.